### A. M. CHILDRESS v. H. W. SMITH ET AL.

#### Decided April 26, 1897.

**1. Supreme Court—Petition for Writ of Error—Assignments.**

The assignments in petition for writ of error should distinctly specify the ruling of which complaint is made. See assignment held insufficient. (Pp. 612, 613.)

**2. Suit on Contract.**

Plaintiff having sued for the contract price for work done in the construction of a building, and not upon quantum meruit, could not recover without establishing the excuse alleged by him for failing to complete his contract,—that defendant defaulted in his contract to pay him as the work progressed; and his right to receive payment depending, under the contract, upon production of an architect's certificate, which was refused, he was required to show that such refusal was wilful or fraudulent in order to establish such default. (P. 616.)

**3. Special Verdict.**

Where a special verdict is taken all facts necessary to a recovery by plaintiff must be established by the verdict in order to support a judgment. See case for example of numerous issues omitted, held fatal to judgment. (Pp. 616, 617.)

ERROR to Court of Civil Appeals, Fourth District, in an appeal from Dallas County.

*L. McLaurin & John Bookhout*, for plaintiff in error.—Where, by the terms of the contract, it is mutually agreed that a third person, therein

named is to become the sole arbiter, to determine the amount to be paid, said amount to be determined by certificates of said third party, the procuring of such certificate is a condition precedent to plaintiffs' right to maintain a suit for work done and material furnished under the contract. Johnson v. White, 27 S. W. Rep., 174; Railway v. Henry, 65 Texas, 686; Boettler v. Tendick, 73 Texas, 492; Smith v. Briggs, 3 Denio, 73; Smith v. Brady, 17 N. Y., 173; 2nd Sutherland on Damages, 519; Law of Building and Buildings, sec. 20.

It is not sufficient excuse that the architect may have stated that it was useless to give a certificate, because the contractor had no monies to pay. It is only where the architect fraudulently and arbitrarily refuses to give a certificate, that the contractor will be authorized to sue without first procuring a certificate and complying with the terms of the contract.

Where the evidence shows that the contractor was at fault in failing to carry out the terms of the contract, he is not entitled to recover under the contract for the amount of work he performed, and is not entitled to enforce a mechanic's lien against the property. Ricker v. Schadt, 23 S. W. Rep., 907; Wright v. Myer, 25 S. W. Rep., 1123.

If both parties have broken the contract and there has been a mutual abandonment, the employe is entitled to recover the reasonable worth of the services rendered the employer. There is no evidence of the reasonable value of the work done to the owner. The pleading sought to recover upon the contract, and not on a quantum meruit, or the reasonable value of the work done. Carroll v. Welch, 26 Texas, 148; Gonzales College v. McHugh, 21 Texas, 256; Hillyard v. Crabtree, 11 Texas, 264; Weiss v. Devlin, 67 Texas, 512.

The mere fact that the money was not paid as fast as the work progressed did not authorize the contractor to abandon the contract, and especially is this the case when there was a difference between the contractor and the architect, whether the contractor was entitled to anything at all under the terms of the contract. Phillips on Mechanics' Liens, sec. 138; Kinney v. Sherman, 28 Ill., 520.

*Dickson & Moroney,* for defendants in error.—Appellant insists that under the contract, the architects' certificate was a condition precedent to a right of action under the contract. A sufficient answer to this proposition is that the contract was framed to apply to a going concern, an enterprise being actually prosecuted, not to an abandoned speculation. When the business collapsed for want of funds, the architects' services were no longer required.

Special issues were first submitted, and when they were answered, the court submitted a general charge, assuming as established the facts found specially by the jury. This was manifestly a proper mode of procedure. Howard v. Kopperl, 74 Texas, 494. It was utterly impracticable to submit this case under a general charge requiring a single general verdict.

When a fact alleged in plaintiff's petition is also alleged or admitted in an answer and plea in reconvention filed by defendant, there is no issue

as to such fact, and no necessity of evidence or verdict in reference to the same. In such case a special finding of the jury contrary to the admissions of record in the pleadings of the parties should be disregarded as surplusage, and judgment rendered in accordance with the fact as alleged by both parties. Day v. Cross, 59 Texas, 595; Ogden v. Bosse, 86 Texas, 336; Mills v. Paul, 30 S. W. Rep., 559; Looney v. Simpson, 25 S. W. Rep., 476; Hill v. George, 5 Texas, 87; Nesbitt v. Richardson, 14 Texas, 658; Grimes v. Hagood, 19 Texas, 246; Lyon v. Logan, 68 Texas, 521; Pearce v. Bell, 21 Texas, 688.

When a verdict is on special issues, judgment may be rendered on the material findings alone, disregarding such as are immaterial. Smith v. Gans, 4 Texas, 72; O'Brien v. Hilburn, 22 Texas, 616; Gaines v. Bank, 64 Texas, 18; Railway, Porfert, 72 Texas, 344.

When special findings cover all the material issues made by the pleadings, they will control a general verdict in conflict with them. Same authorities.

A verdict will be construed by reference to the pleadings, and may be aided or controlled by them. James v. Wilson, 7 Texas, 230; Parker v. Leman, 10 Texas, 116; Avery v. Avery, 12 Texas, 54; Darden v. Mathews, 22 Texas, 320; Loggins v. Buck's Admr., 33 Texas, 113; Newcomb v. Walton, 41 Texas, 318; Griffin v. Chadwick, 44 Texas, 406; Jones v. Ford, 60 Texas, 127; Tom v. Sayers, 64 Texas, 339; Veck v. Holt, 71 Texas, 715; Buchanan v. Townsend, 80 Texas, 534; Roy v. Railway, 32 S. W. Rep., 72.

GAINES, CHIEF JUSTICE.—In this case both the appellant and the appellees in the Court of Civil Appeals have applied for a writ of error. In appellant's application there are ten propositions submitted, which are presumably intended as assignments of error. The fourth, fifth and ninth, it seems to us are properly such; but the others are mere statements of propositions of law, and contain no direct averment that the Court of Civil Appeals erred in any ruling. As an example we copy the first:

"Where the petition shows that plaintiff is in a suit to foreclose a mechanic's lien, has only placed $1200.00 worth of work and material in the improvement, and seeks to recover, in addition thereto, for the value of the material which was ordered for the improvement, and which the contractor thereafter sold at a loss, and it is further alleged that the contractor could have made a profit, a demurrer to the petition to plaintiff's seeking to foreclose a lien for anticipated profits and unliquidated damages, and that he is only entitled to recover for work actually done and performed, should be sustained, the law being that a lien cannot be foreclosed for anticipated profits or unliquidated damages."

It may be conjectured, that a demurrer to the petition upon the ground indicated in the proposition had been overruled by the trial court, that the Court of Civil Appeals had affirmed that ruling, and that it was the intention of the appellant to complain of the decision of the latter court.

upon the point. The assignment should distinctly specify the ruling of which complaint is made. The purported statement of the ground of complaint is, as to its form, a good proposition under a proper assignment, but it is not itself a good assignment of error. The other purported assignments, save the three enumerated above, are subject to the same objection.

The appellant in the Court of Civil Appeals will be allowed ten days to amend his application. Action upon appellees' application will be suspended until the lapse of that time, if the amendment be not previously filed.

Delivered January 13, 1897.

DENMAN, ASSOCIATE JUSTICE.—On the 27th day of April, 1891, Peterman & Griffith as principal and Hoyle and Hoyle as sureties, parties of the first part, entered into a contract with A. W. Childress, party of the second part, whereby it was agreed (1) that parties of first part should at their own expense furnish material and labor, and "erect, put up, and finish entire and complete" a certain power house, according to certain specifications, same to be done under the superintendence and according to the directions of certain architects, clothed with power to reject any portion of the work or material which in their opinion was not in accordance with said specifications, their decision to be final and binding, said architects also having power to make any change in the plan or any addition to or omission in the work and materials for said power house, as they might think proper, the difference in the cost occasioned thereby to be fixed by said architects, their action in the matter to be final; (2) that in case parties of first part should fail to finish the work by the 31st of July, 1891, they should pay as liquidated damages $20 per day for each day they might require thereafter to finish same, such damages to be deducted from all moneys due them under the agreement; (3) that party of second part, "in consideration of the faithful performance and completion of the foregoing described work and this agreement by said parties of the first part," should pay to parties of first part "the sum of $12,500 in the manner following, payments to be made every two weeks on the architects' certificates for amount of work done" less 15 per cent, which was to be held until final completion of the contract and all liens and material men had been satisfied and all the conditions of the contract complied with.

H. H. Smith, as assignee of said sureties, brought this suit against A. W. Childress and various other persons claiming the property upon which said building was erected and the mechanic's liens thereon, alleging in his petition among other things not necessary to mention, (1) that said principals having begun and abandoned the work their sureties undertook the performance of the contract; (2) that in pursuance of the terms thereof and in attempting to carry out the same they furnished and performed a large amount of material and work, but before they completed the same

they were compelled to stop work on account of not being able to get payments due them under the contract from Childress; (3) that at the time they stopped work the building could have been completed according to the contract by the expenditure of labor and material of the value of $1694.65; (4) that at the time of such cessation of work the sureties had procured and prepared for the purpose of completing said building a large amount of material, which they were compelled to sell at a sacrifice of $500 by reason of its having been specially prepared for said work; (5) that the sureties had done a large amount of extra work not included in the contract, for which they claimed compensation; (6) that the architects refused to give the sureties estimates for work done under contract, on the ground that it was useless to do so as Childress was insolvent; (7)· that said claims of the sureties have, for valuable consideration, been transferred to plaintiff Smith; wherefore he sought to recover judgment. against Childress upon the contract for the contract price, less said $1694.65, also for said $500, and in addition thereto sought judgment against Childress for the reasonable value of said extra work.

Childress answered among other things not necessary to mention, (1) general denial; (2) that at the time the sureties ceased work it would have taken thirty days after 31st day of July, 1891, to have completed the contract; wherefore under the stipulation therein, above quoted, he claimed a deduction of $20 per day for thirty days from the balance that might be found due if any; (3) that after the sureties abandoned the work, it was necessary to expend $3000 to complete same in accordance with the contract; (4) that notwithstanding estimates were furnished by the architects for all work done in compliance with the contract as it progressed, and notwithstanding such estimates were promptly paid, the sureties, finding that they had an unprofitable contract, willfully, intentionally and without the fault of defendant abandoned the same and carried off the material on hand and appropriated the same to their own use· and benefit; (5) that plaintiffs cannot recover the contract price of work claimed to have been done under the contract without first procuring the estimate of the architects therefor, because, under the terms of the contract, the procuring of the estimates is a condition precedent to plaintiffs' right to demand payment from defendant.

Various subcontractors who performed work under the sureties while they were attempting to carry out the contract came in, either as defendants or interveners, and set up their respective claims under contracts made with the sureties, asking ʲudgment and for foreclosure of their mechanic's liens therefor.

The cause was submitted by the court to the jury upon special issues, without any instructions as to the rights of the parties under the various issues presented by the pleadings, in response to which special issues the jury answered, (1) that in signing the contract "A. W. Childress for himself and associates," Childress intended to sign for himself; (2) that the true amount agreed to be paid by the contract was $11,300; (3) that the sureties undertook to carry out the contract for the principals; (4) that

in so doing they expended labor and material to the amount of $9905; (5) that Childress and associates paid for work and material furnished under the contract $4770; (6) that of said amount paid $2700 was paid to various named subcontractors; (7) that the sureties did not furnish the power house as contracted for and at the time agreed upon; (8) that the reason they did not do so was "for want of estimate and money;" (9) that the sureties did defective work in the manner of letting the rafters rest upon the walls, which could be remedied by an expenditure of $230; (10) that the sureties abandoned the work because they "failed to secure estimate, and unprofitable contract;" (11) that it would have required twenty days after July 31st, 1891, to have completed the work according to contract; (12) that Childress and associates did not complete the work according to the contract and that the evidence does not show the date of completion or the exact amount paid therefor, but the jury estimated the amount necessary to have completed it according to contract at $2176.20; (13) that Childress and associates did not make payments for the work done and materials furnished by the sureties according to the terms and provisions of the written contract; (14) that if they had done so the sureties could not have completed the work at the time contracted for according to contract; (15) that the total amount due the different subcontractors for material furnished and work done on the power house is $2940.20; (16) that Childress and associates paid off the claim of Conroy for work done under the contract $900; (17) that the sureties did extra work under the contract with the approval of Childress and his associates, which was reasonably worth $250; (18) that the sureties had purchased and prepared material for the power house that did not go into the same, which they disposed of at a loss of $500. After this special verdict was returned by the jury, the court directed them to return the next morning and receive further instructions, and accordingly on the next morning the court instructed them to return a verdict in favor of the subcontractors against A. W. Childress for the amounts they had previously found to be due them, and also to return a verdict for plaintiff Smith against Childress for the amount found to be due the sureties at the time the work was abandoned, less the amounts found in favor of said subcontractors, with a foreclosure of lien upon the property for all the sums so found. In response to this charge the jury found for the various subcontractors $2940.20 and in favor of plaintiff Smith for $1551.20 against A. W. Childress with a foreclosure of lien on the property. The amount thus found in favor of the subcontractors is the same stated to be due them on their contracts in the special verdict, but it is not clear as to how they arrived at the amount given Smith. The finding that $11,300 was the true amount agreed to be paid by the contract was probably based upon the statement in plaintiffs' petition that after the contract was made, by agreement of all parties, certain changes and omissions were made in the work to be done, and the price agreed to be deducted on that account was $1200. The jury by deducting this amount from the $12,500 stated in the contract as the contract price would have reached the finding above

that $11,300 was the true amount agreed to be paid for the work completed according to contract.

Upon this verdict the court rendered judgment against Childress, in favor of said subcontractors and Smith, for the respective amounts thus found due them and for foreclosure of mechanic's liens upon the property therefor. Childress having appealed to the Court of Civil Appeals and assigned as error the giving of said charge, said court affirmed the judgment against him, and he has brought the case to this court upon writ of error, assigning as error the action of the Court of Civil Appeals in refusing to reverse the judgment upon such assignment.

Plaintiff having sued upon the contract for the contract price of the work done thereunder, and not upon a quantum meruit, and having alleged that the sureties did not complete the building, could not recover without justifying the failure to complete by establishing the fact alleged by him and denied by defendant, that Childress defaulted in his contract to pay them as the work progressed; (City of Sherman v. Connor & Oliver, 88 Texas, 35, and authorities cited) and since the parties by their contract provided that Childress should pay on the architects' certificates he could not be placed in default in the absence of such certificate, unless plaintiff established that the architects fraudulently or willfully refused the same. (Jones v. Risley, 32 S. W. Rep., 1027; Kilgore v. Baptist Society, 35 S. W. Rep., 145; Boettler v. Tendick, 73 Texas, 492; Smith v. Briggs, 3 Denio, 73; Smith v. Brady, 17 N. Y., 173.) If the suit had been upon a quantum meruit to recover for the value of work done, instead of upon the contract for the contract price, we apprehend plaintiff could have recovered without establishing these facts; for then he would have been proceeding independent of the contract. City of Sherman v. Connor & Oliver, supra. Again, it is clear that, in order to fix any liability on the part of Childress for the loss sustained by the sureties in selling the material they had purchased and prepared to put into the building, it was incumbent upon plaintiff to establish the fact that they were justified in abandoning the work. Again, the assignment of the claim of the sureties to Smith, alleged in the petition, having been put in issue by the general denial, it was incumbent upon plaintiff to establish such fact in order to justify a recovery thereon by him against Childress. None of these facts were submitted to or found by the jury in the special verdict and therefore such verdict could not support the judgment in favor of Smith against Childress; (Silliman v. Gano, 90 Texas, 637.) and, since the recovery by the subcontractors is only an apportionment to them of such portion of the liability of Childress to the sureties as the latter owed them, their judgments must abide the same fate and be based upon proof of said facts, except as to the assignment or transfer. The (8), (10) and (13) special findings above stated do not find either that the architects wrongfully refused estimates or that Childress wrongfully refused payments. Since said facts were not established by the special verdict, and their finding by the jury was essential to plaintiffs' right to recover in this action, the court erred in giving the charge

complained of, directing the jury to find a verdict against Childress, for such charge must necessarily have assumed the existence of such controverted facts. Again, the charge virtually instructed the jury to ignore the offsets pleaded by Childress, when under the pleadings and evidence it should have been left to the jury to say whether they should have been allowed, and to what extent. For the error in giving such charge the judgments of the Court of Civil Appeals and the trial court will be reversed and the cause remanded. On account of the confused manner in which the petition and answer present the issues we suggest that the trial court should of its own motion, before another trial, order the parties to replead so that it can determine the very questions to be decided. If this had been done before the trial it is entirely probable that the court would not have omitted to submit the facts above mentioned to the jury.

*Reversed and remanded.*