## CRAVEN et al. v. DAVISON.   (No. 8147.)

(Court of Civil Appeals of Texas. Galveston. June 30, 1921. Rehearing Denied Oct. 6, 1921.)

**I. Injunction ⬅➡43—Against payment of moneys constituting mere chose in action not granted.**

A fund accruing to a contractor from a county for the construction of a road being but a chose in action, equity will not enjoin payment and collection, to aid a creditor whose claim was not reduced to judgment, where no fraud or trust was shown.

**2. Injunction ⬅➡13—Refused where no probable danger to plaintiff's rights shown.**

Irrespective of the existence of a probable right of a sublessee of a road building contract to a county fund payable to the contractor, or to damages for the latter's breach of contract in proceeding with the construction of the road after subletting the contract, payment by the county and collection by the contractor of sums payable during the progress of the work will not be enjoined where no probable danger to such rights was shown.

**3. Injunction ⬅➡24—Not granted where public work injuriously affected.**

Since the stopping, delaying, or hampering of the construction of a county highway from the county seat to the line of an adjoining county would work serious injury to county and public generally, payment to and collection by the road contractor of sums payable during the progress of the work will not be enjoined.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Action by Ben S. Davison against M. M. Craven and others. From a judgment granting a temporary injunction, the named defendant appeals. Reversed, and temporary injunction dissolved.

GRAVES, J. M. M. Craven held a written contract with the county of Gillespie, in Texas, under which he was to construct for it with gravel and crushed rock surfacing 17½ miles of roadway extending from the town of Fredericksburg west to the Mason county line. The work was to be paid for on unit prices, so much per acre for the grubbing, so much per cubic yard for the excavations, hauling, etc., with provision that, as the work progressed, 90 per cent. of the value of labor and material furnished by the contractor should be paid him each month by the county on the issuance of estimates thereof, the remaining 10 per cent. to be reserved by the county until completion of the entire enterprise.

Subsequently, also by an instrument in writing, Craven sublet this entire work to Ben S. Davison, their agreement being that Davison would undertake to carry out and

perform Craven's contract with Gillespie county according to its terms, for 90 per cent. of what the county was to pay Craven, 85 per cent. of the monthly estimates as paid by the county to go to Davison and 5 per cent. to Craven, and the 10 per cent. so reserved by the county to belong one-half to Davison and one-half to Craven.

These two individuals further constituted a bank at Fredericksburg and its cashier as their agent to receive the monthly vouchers from the county, collect the money, and divide it between them according to the above arrangement. With the knowledge of the county officials, this subtransaction between Craven and Davison was partially executed by Davison's entering upon and doing some of the work, and receiving through this Fredericksburg bank his agreed part of seven of the monthly estimate payments made by the county, all of which were issued in the name of Craven. Neither the commissioners' court nor the engineer of the county ever consented in writing or in any way that this work should be done by Mr. Davison, nor was the provision of the state highway department of Texas that "no work is to be sublet or assigned by the contractor without the written consent of the engineer and the written permission of the state highway engineer" carried out. This subletting of the work as between Craven and Davison, therefore, never became a legal contract or in any way binding upon Gillespie county.

With matters in this condition and at this stage, after ten of the twelve months allowed Craven for completion of the undertaking had elapsed, the county became dissatisfied with the way Davison was doing the work and in writing demanded of Craven that he himself proceed with the construction of the road, under penalty of being held on the bond he had made the county for the faithful performance of his contract; this Craven did to the exclusion of Davison, and the county thereafter refused to turn over warrants for the succeeding monthly allowances to the Fredericksburg bank and paid them to Craven direct until stopped by order of the trial court in this proceeding.

Davison then brought this suit for damages against Craven, claiming something over $10,000 to be due him under the terms of their contract for what he had done, and the further sum of $16,000 as a profit he alleged he would have made if he had been permitted to complete the contract.

On plaintiff's application the trial court first issued a temporary restraining order against defendant Craven, the judge, commissioners, and clerk of the county in their respective official capacities—effective until further hearing—directing Craven neither to transfer nor assign his contract with the county or any money accruing thereunder in any way, nor to receive or collect from the county, its officers or agents, any money or estimates pursuant to the terms of his contract with it, and ordering the county officials named not to issue or deliver to defendant Craven or any one else than the Fredericksburg bank any warrant calling for the payment of or evidencing any indebtedness arising by virtue of the contract between Craven and Gillespie cousty.

On subsequent hearing, defendant Craven's answer and motion to dissolve having come in and both sides having submitted evidence, the court, after overruling the motion to dissolve, decreed as follows:

"And the court being further of opinion that the application and petition of plaintiff for a temporary injunction, restraining the defendant M. M. Craven from collecting certain moneys from Gillespie county and restraining the other defendants, as officers of Gillespie county, from paying the same to the said defendant, M. M. Craven, should be granted in part only; it being the purpose of the court to impound by injunction sufficient of said moneys to protect the plaintiff in his rights and at the same time not to interfere with the right of the defendant M. M. Craven to collect from time to time sufficient moneys to enable him to carry out the terms of his contract with Gillespie county.

"It is therefore ordered, adjudged, and decreed by the court that writ of injunction issue upon plaintiff giving bond in the sum of $5,000 payable and conditioned as required by law, restraining and enjoining the defendant Craven from assigning or transferring or attempting to assign or transfer his contract with Gillespie county to any person, firm, or corporation; and also restraining and enjoining the defendant M. M. Craven from receiving or collecting or attempting to receive or collect from Gillespie county or the officers thereof any part of the 10 per cent. retained percentages provided by the terms of said contract to be kept and retained by Gillespie county until the completion of the work, whether such retained percentages have accrued in the past or shall hereafter accrue; and further restraining and enjoining the defendant M. M. Craven from collecting or attempting to collect from Gillespie county, its officers or agents, any sum or amount on account of deferred payments or monthly estimates now due or hereafter to become due under the terms of said contract in excess of 75 per cent. of the net amount of such deferred payments or monthly estimates remaining after the deduction of the 10 per cent. retained by the county under the terms of the contract until the completion of the work.

"And it is further ordered, adjudged, and decreed by the court that the defendants A. H. Kneese, as county judge of Gillespie county; Charles Lehne, Lorenz Wendel, M. Berg, and I. W. Lee, as county commissioners of Gillespie county; and Albert E. Klett, as county clerk of Gillespie county—be and they are hereby enjoined and restrained from paying or causing to be paid to the defendant M. M. Craven any part of the moneys which the said defendant, M. M. Craven, is enjoined and restrained from collecting under and by virtue of the terms of this order, or from paying said sums of mon-

ey ·or any part thereof to any person, firm, or corporation other than the Citizens' Bank ,of Fredericksburg, or to Wm. Bishwell, as cashier of said bank; and it is further ordered that, except as herein specifically granted, the application and prayer of the plaintiff for temporary injunction be and the same is hereby in all things overruled and denied. It is further ordered that the temporary injunction herein granted shall remain in full force and effect pending this litigation, unless otherwise ordered by the court."

From this judgment so granting the temporary injunction against him the defendant Craven appeals to this court, assigning against it here, among others not deemed needful to mention, the following grounds of complaint:

"(1) It being clearly shown that the plaintiff Davison was in no danger because of the insolvency of the defendant, or because of the defendant's dissipating and concealing his assets, and it further appearing that the contract made with Gillespie county was for a public work, to wit, building of a public road, and that enjoining said county or its officials from making a payment for said work as the work progressed would work a great injury to the public and to' Gillespie county, the injunction should have been denied.

"(2) A suit by creditors' bill will not lie in Texas, the right of attachment or garnishment having been substituted for same, there- fore. a chose in action cannot be reached by an equitable suit to subject it to the payment thereof whether such chose in action be subject to garnishment or not.

"(3) The fund in the hands of the county of Gillespie not being subject to garnishment for the debt of Craven, no good can come from the injunction restraining said county or its officials from paying said money to Craven, but great injury will result to Craven thereby, and because an injunction will not be granted which cannot accomplish the purpose for which same is sued out, the injunction in this case should have been refused."

"(6) The court in granting an injunction should require a case of probable right and probable danger to the right without the injunction, and the pleadings of the parties and the evidence having shown that not only has the plaintiff not a probable right, but that the right which he claims is not in probable danger, the injunction should have been refused."

In our opinion, each and all of these objections are well taken. The statement of facts brought up with the record evidences the truth of the matters of fact they aver, and much more. As our foregoing recitation has disclosed, the subcontract between Craven and Davison was never a legal one nor recognized by Gillespie county, which at all times looked to Craven to discharge his obligation under his own contract to it. While it was alleged in the application for injunction that appellant had not sufficient property or means to respond to the claim for damages made, that he would unless restrain- ed collect the full amount called for in his contract with the county, including the 10 per cent. reserved, or would assign the same to some one else, or would dissipate, conceal, and place the same beyond the reach of creditors, none of these averments were substantiated upon the hearing. On the contrary, the proof was undisputed that he was worth over and above. all liabilities from $60,000 to $75,000, consisting of lands and other property located in different parts of Texas; that he had no intention of secreting, selling, or attempting to place any of it beyond the reach of his creditors; that when he had ˙fully performed his contract with Gillespie county there would be in its possession and answerable for his debts from $10,000 to $12,000, and that he had given the county an acceptable bond for $43,000 to assure it of compliance on his part with his agreement to build the road; finally, that he had offered, and again at this hearing tendered, to appellee Davison, a bond for $16,- 000 conditioned in event he was permitted to collect the money as it accrued under his contract with the county, upon his paying the full amount of any final judgment with costs that might be rendered in appellee's favor against him in this cause, signed by sureties whose aggregate worth was not under $250,000.

It was likewise shown that business and financial conditions at the time were such that, despite ample assets, it was difficult to finance an undertaking of the kind and magnitude of the one here involved.

[1] The fund accruing or to accrue to Craven from the county was at most but a chose in action, Davison's claim against him had not been reduced to a judgment, no case of fraud or trust was made out, and in such circumstances our courts have held that equity will not aid the creditor with injunction. Bank v. Bass, 177 S. W. at page 1022, par. 4, and authorities cited.

[2] Moreover, whatever might be determined as to whether or not Davison had a probable right in connection with this county fund or as to the damages he claimed, we think it entirely clear, under the pleadings and the evidence, that no probable danger to either was shown; that being true, injunction should have been refused. Whitaker v. Hill, 179 S. W. 539; Gillespie County v. Land Co., 168 S. W. 9.

[3] The work here affected was a. public one, the construction of a county highway from the county seat to the line of an adjoining county; it goes without saying that the stopping, delaying, or hampering of such a project by the harsh process of injunction would work serious injury to the county, its citizens, and the public generally.

Convinced that, under the facts developed, the writ of temporary injunction was improvidently issued, the decree so awarding it

is reversed, and this court's judgment is here entered in all respects dissolving it.

Reversed, and judgment rendered dissolving the temporary injunction.

⊙⇒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes