CRAVEN v. DAVISON.   (No. 8357.)*

(Court of Civil Appeals of Texas.   Galveston.
May 25, 1923.   Rehearing Denied
April 10, 1924.)

1. Highways ⊜⟶113(4)—County engineer's determination that subcontractor's work was unsatisfactory held to require contractor to complete the contract.

Under county contract providing for construction of road to satisfaction of county engineer, and making his decision on questions final, his determination in good faith that subcontractor's work was unsatisfactory, and his demand that contractor take over work, required contractor to complete contract himself; engineer's determination being conclusive as to necessity for taking over work, and good or bad faith of contractor being immaterial.

2. Highways ⊜⟶113(4)—Subcontractor held to have undertaken work with the right merely to proceed so long as engineers did not object.

Subcontractor, who started construction of county road without consent or approval of the county engineer or state highway engineer, with knowledge that the principal contract required such consent and approval, and proceeded with work with knowledge that county considered that principal contractor was performing the work, had the right merely to proceed as long as the engineers did not object.

3. Pleading ⊜⟶144—Counterclaim for amount due by reason of other transaction between parties held insufficient.

In subcontractor's action against contractor for refusal to permit subcontractor to complete contract, counterclaim for amount due by reason of separate transaction, in another county, alleging merely subcontractor's indebtedness to contractor according to itemized account without averments as to the other contract and breach, held insufficient.

Appeal from District Court, Harris County; J. D. Harvey, Judge.

Suit by Ben S. Davison against M. M. Craven.   Judgment for plaintiff, and defendant appeals.   Affirmed in part, and reversed and rendered in part.

See, also, 233 S. W. 872.

Bryan, Dyess & Colgin, of Houston, for appellant.

J. D. Dodson, of San Antonio, and H. H. Cooper and Sam R. Merrill, both of Houston, for appellee.

GRAVES, J.   Davison sued Craven for damages for the breach of this contract:

"The State of Texas, County of Harris.

"This memorandum and agreement by and between M. M. Craven and Ben S. Davison, of said state and county, witnesseth:

"That Craven has now a contract with Gillespie county, Tex., for the construction of a state highway from the town of Fredericksburg, west to the Mason county line, a distance of about 17½ miles, which contract has been signed by both Craven and the county judge and commissioners' court of Gillespie county, and is now with the state highway commission at Austin, Tex., for approval, and is expected to be approved any day.

"Craven has given a bond conditioned in accordance with law and in the sum of $42,600, for the faithful performance of his contract for the construction of said highway, the sureties on said bond being T. W. Davis, A. P. George, J. W. Slavin, T. B. Wessendorf, all of Ft. Bend county, Tex., said bond also being conditioned for the payment of all labor and material furnished for and used in the construction of said highway.

"By mutual agreement Davison takes over and obligates himself to carry out Craven's contract with Gillespie county for the construction of said highway, in accordance with the terms of the contract between Craven and Gillespie county, provided, however, that said contract is approved by the state highway commission, so that the contract can be carried out.

"It is understood and agreed that the 10 per cent. which is retained by Gillespie county, and which will be paid to Craven under his contract when the same is fully carried out, will be owned, one-half by Craven and one-half by Davison, and that out of each estimate that is made, and of which 90 per cent. will be paid by the county to Craven, that Craven will pay 85 per cent. of same to Davison, and on the final settlement with the county when the 10 per cent. reserved by the county is paid to Craven, he will pay one-half of same to Davison and retain one-half for himself, making the amount paid to Craven 10 per cent. of the total amount paid by the county for the work, and the amount paid to Davison 90 per cent. of the total amount paid by the county for the work.   The contract or copy thereof between Craven and Gillespie county will be attached hereto and made a part of this contract.

"Davison is to give Craven a bond in the sum of $17,500, conditioned upon the faithful performance of this contract by Davison, that is to say, that Davison is obligated to carry out the terms and conditions of the contract between Craven and Gillespie county.

"In taking over this contract it is understood that Craven has sublet about 3 miles of the highway to R. R. Randle, and that Davison will respect and carry out this contract, which contract provides that the earth borrow is 29 cents per cubic yard, solid rock is at 1 dollar, 60 cents per cubic yard, loose rock at 52 cents per cubic yard, earth roadway 30 cents per cubic yard, gravel (first one-fourth mile, loading and spreading) at 75 cents per cubic yard, each additional one-fourth mile haul 11 cents, but there is no screening in Randle's contract.

---

⊜⟶For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes
*Writ of error granted June 6, 1924.

"Witness our hands in duplicate at Houston, Tex., this 29th day of June, A. D. 1920.

           "M. M. Craven.
           "B. S. Davison."

In declaring upon this agreement, Davison alleged that he had partly performed the same, and was ready, able, and willing to go on to full performance, when, about February 15, 1921, Craven upon his part breached it, and himself took over and completed the work, it was therein contemplated and agreed that Davison should do, to the latter's damage as follows:

"(a) For moneys earned by him in his part performance of the contract, but which had been retained by Gillespie county, and were subsequently collected by Craven, in amount $2,724.80.

"(b) For moneys earned by him, for which estimates were not due at the time of the breach of the contract, but which were subsequently collected and retained by Craven, in amount $7,815.35.

"(c) The profits which would have accrued to him if he had been permitted to complete the contract, to the amount of $16,000."

What are deemed material provisions of the road construction contract between Craven and Gillespie county upon which the one between Craven and Davison so declared upon was based are to this effect:

"Item 3, General Provisions.

"3.1. *Subletting or Assignments.*—No work is to be sublet or assigned by a contractor without the written consent of the engineer and written approval of the state highway engineer."

"3.3. *Scope of Work.*—The contractor shall furnish, unless otherwise provided in 'special provisions of the proposal and contract' hereto attached, all labor, tools, equipment, and materials necessary to complete the work to the finished lines, grades, and cross-sections, and shall do such additional or incidental work as may be considered necessary, in the opinion of the engineer, to complete the work in a substantial and satisfactory manner."

"3.9. *Prosecution of the Work.*—The contractor shall give his constant personal attention to the work while it is in progress, or shall place it in charge of a competent and reliable superintendent who shall have full authority to act for him, and who shall be acceptable to the engineer, and shall prosecute the work at such points and in such order as the engineer may from time to time direct. If at any time during the work, progress satisfactory to the engineer shall not have been made, the contractor shall increase the force, tools, and equipment as directed by the engineer, but the failure of the engineer to give such directions shall not relieve the contractor of his obligations to complete the work at the time and in the manner specified in this contract.

"3.10. *Character of Workmen and Equipment.*—Whenever the engineer shall determine that any person employed by the contractor is, in his opinion, incompetent, unfaithful, disorderly, or insubordinate, such person shall upon notice be discharged from the work, and shall not again be employed on it, except with the written consent of the engineer. Any machinery furnished by the contractor which shall be deemed by the engineer as being unfit for use on the work shall be removed at once upon due notice to the contractor by the engineer.

"3.11. *Co-operation of Contractor.*—The contractor shall have in his possession a copy of all plans and specifications, and shall familiarize himself with same. At all times and places where work is in progress the contractor shall have a superintendent or head workman in charge upon the site as the contractor's representative to receive and obey the orders of the engineer."

"3.15. *Responsibility Before Acceptance.*—All depressions, defects, and imperfections which may become evident in any portion of the roadway or structures before final acceptance of the work by the engineer, whether due to poor workmanship or material, public travel, rain, snow, ice, frost, or other causes, shall be repaired and made good by the contractor at his own expense. Issuance of any estimate on any part of the work done shall not be considered as a final acceptance of any work completed up to that time. The contractor will be required to replace any portion of any pavements adjoining the work which may have suffered through his operation, and it shall be left in a neat, workmanlike manner in a condition equal to that obtaining before the contractor started the work."

"3.21. *Engineer as Referee.*—It is agreed by both parties to this contract that the engineer shall act as referee in all questions arising under the terms of this contract between the parties hereto, and that the decision of the engineer in such cases shall be final and binding upon both alike."

"3.25. *Order and Sequence of Work.*—The work shall be done at such points and in such order and sequence as the engineer may direct. The contractor shall notify the engineer at a reasonable length of time in advance of the starting of any new work upon the project."

"3.27. *Suspension of the Work.*—The engineer may stop any portion of the work if in his judgment the weather or other conditions, such as labor troubles, poor materials, etc., are such as to prevent the same being done properly. Such notice shall be in writing to the contractor."

"3.30. *Annulment of Contract.*—If the contractor fails to begin the work under contract within the time specified, or fails to perform the work with sufficient workmen and equipment or with sufficient materials to insure the prompt completion of said work, or shall perform the work unsuitably or shall neglect or refuse to remove materials or perform anew such work, or if the contractor shall become insolvent or be declared bankrupt, or commit any act of bankruptcy or insolvency, or allow any final judgment to stand against him unsatisfied for a period of forty-eight (48) hours, or shall make an assignment for the benefit of creditors, or from any other cause whatsoever shall not carry on the work in an acceptable manner, the engineer shall give notice in writing to the contractor and his surety, of such delay, neglect, or default, specifying the same, and if the contractor, within a period of ten (10) days after such notice shall not proceed in accordance

therewith, then the commissioners' court shall, upon written certificate from the engineer of the fact of such delay, neglect, or default and the contractor's failure to comply with such notice, have full power and authority, without violating the contract, to take the prosecution of the work out of the hands of the contractor, to appropriate or use any or all materials and equipment on the ground as may be suitable and acceptable, and may enter into an agreement for the completion of said contract according to the terms and provisions thereof, or use such other methods as in his opinion shall be required for the completion of said contract in an acceptable manner. All costs and charges incurred by the department, together with the costs of completing the work under contract, shall be deducted from any moneys due or that may become due said contractor. In case the expense so incurred by the department shall be less than the sum which would have been payable under the contract, if it had been completed by said contractor, then the contractor shall be entitled to receive the difference, and in case such expense shall exceed the sum which would have been payable under the contract, then the contractor and the surety shall be liable, and shall pay to the state the amount of said excess."

"3.34. *Final Payment.*—(b) It is mutually agreed between the parties hereto that no estimate or payment made under this contract, except the final estimate or final payment shall be conclusive evidence of the performance of this contract, either wholly or in part, against any claim of the party of the first part, and then not until the lapse of thirty days after the acceptance of the work by the party of the first part; and no payment shall be construed to be an acceptance of any defective work or improper materials, nor a release from any claim for damages.

"Proposal.

"The undersigned as bidder * * * agrees that he will provide all necessary machinery, tools, apparatus, and other means of construction, and will do all the work and furnish all the materials called for in the contract and specifications in the manner prescribed therein, and according to the requirements of the engineer as therein set forth.

"The work proposed to be done shall be accepted when fully completed and finished to the entire satisfaction of the state highway engineer and after having been subject to public team traffic for its entire length for a period of not less than thirty (30) days.

"Contract.

"Witnesseth: That for and in consideration of the prices and agreement mentioned in the proposal hereto attached and made part of this contract, the said contractor agrees to do, at his own proper cost and expense, all the work necessary for the improvement of road No. 9 in Gillespie county, in accordance with the provisions of the attached notice to contractors, specifications, proposal and plans which are made part of this contract, and in full compliance with all of the terms of the specifications and the requirements of the engineer.

"The said contractor further agrees to begin the work on or before July 19, 1920, to complete same not later than in 350 working days

and to keep the road open to traffic during construction.

"Contractor's Bond.

"The condition of this obligation is such that, if the said bounden principal, M. M. Craven, shall in all things well and truly perform all the terms and conditions of the aforegoing contract, to be performed, and within the time therein mentioned, and shall pay all lawful claims for labor performed and material furnished in and about the construction of said road."

The pleadings of the parties on which the cause went to trial may be thus briefly summarized:

Plaintiff, after reciting the making of the two quoted contracts, and setting out the main provisions thereof, averred: That immediately after the execution of their subcontract plaintiff and defendant designated a Fredericksburg bank as the joint agent of them both to collect the estimates on this road work as they were issued by Gillespie county, and to divide the same between them in accordance with their subcontract.

Shortly after the date of the subcontract plaintiff began performance thereof, and earned and collected the estimates made by the county on the work for the months of July, 1920, to January, 1921, inclusive, less 10 per cent. thereof, which was retained by Gillespie county.

That the first work to be performed under the contract in suit was the preparation of subgrades on which the unit prices were low, and which carried very little profit to plaintiff. That the unit prices for preparing and placing the crushed rock and gravel surface on the subgrade were higher, and the profit to the plaintiff in the performance of that part of the work would be much higher than the preparation of the roadway. That before the contract sued upon was made the defendant endeavored to induce plaintiff to contract only for the preparation of the subgrade and leave to him the crushing and placing of the stone and gravel thereon, but plaintiff declined, and thereupon the contract, as copied, calling for plaintiff to do the entire work was made.

That defendant did not intend at the time he entered into this contract with plaintiff to permit him to complete the roadway, but then intended to himself take over the balance of the work after the low profit-bearing preparation of the subgrade had been finished, thereby permitting plaintiff to do only the part of the work on which there was little or no profit, and collect for himself higher profits on the rock crushing and the gravel spreading.

That on or about February 15, 1921, plaintiff, having completed the greater portion of the subgrade and part of the rock work in substantial compliance with the terms and provisions of the contract between Craven and Gillespie county, and being fully pre-

pared and equipped to perform the balance of his contract, on which there was a handsome profit to be made, was engaged in carrying out his undertaking. That defendant then, in accordance and in compliance with his preconceived plan and fraudulent design, and with the purpose of depriving plaintiff of the profits that would accrue from completing the work, during the temporary absence of plaintiff, took personal charge of the job, notified plaintiff's employees that he was no longer connected with the work, told merchants and others with whom plaintiff had been dealing that he was no longer connected with the enterprise, and also undertook to cancel the joint agent arrangement with the Federicksburg bank.

The substance of plaintiff's remaining allegations is thus stated in his brief filed here:

"Plaintiff further alleged: That in pursuance of his unlawful purpose of permitting plaintiff to do the work upon which there was no profit, and then ousting him from the job, defendant entered into a conspiracy with the county engineer and county judge of said county for the purpose of having these persons assist him in his wrongful purpose. That pursuant to said conspiracy the county judge and the county engineer of Gillespie county did, on or about the 15th day of February, 1921, address to defendant a letter notifying him that the work covered by the contract had not been progressing satisfactorily, for the reason that proper machinery and tools were not on the job, and that the work was not being properly handled and supervised, and that at its then rate of progress it could not possibly be finished within the time specified, and insisting upon defendant furnishing necessary machinery and tools, and that he take charge of the work personally or place a suitable and satisfactory man in charge thereof. That said letter purported to have been issued by order of the commissioners' court of Gillespie county, but that no such order appears upon the minutes of said court. That said letter was issued without notice to plaintiff, and that the facts therein stated were untrue, and were known to both the county judge and the county engineer and to the defendant to be untrue, and that said letter was issued at the request of the defendant for the purpose of enabling him to carry out his wrongful and fraudulent purpose to evict plaintiff from that portion of the work upon which a profit was to be made. That no certificate of the engineer had been issued as the basis for said letter of February 15, 1921, and that the same was without force or effect.

"That after February 15, 1921, defendant proceeded with the work of constructing the highway, using plaintiff's equipment, machinery, and tools, and denying to plaintiff the right to carry on the work.

"That when the February, 1921, estimate accrued, the same was collected by the defendant, notwithstanding the fact that it had been earned by plaintiff, and that the defendant also wrongfully collected from Gillespie county the March estimate, a part of which had been earned by the plaintiff and his tools and equipment, and that the defendant has completed the work and collected the entire consideration therefor, including the 10 per cent. retained by the county.

"That the amount retained by Gillespie county on estimates earned by plaintiff was the sum of $5,449.61, of which plaintiff was entitled to one-half, or $2,724.80. That the amount collected on estimate No. 8 belonging to plaintiff was $4,754.75, and the amount of estimate No. 9 which belonged to plaintiff was $3,060.60, making a total of $10,540.15 collected by the defendant from the county, which had previously been earned by plaintiff under his subcontract.

"That, if plaintiff had been permitted to complete his contract, he would have earned a profit of $16,000 on the uncompleted portion thereof. Plaintiff asked judgment for the said sum of $10,540.15, and also for his damages in the sum of $16,000, together with interest from the dates of their accrual."

In answering, defendant, Craven, demurred generally to the sufficiency of plaintiff's petition, specially excepted to the measure of damages therein pleaded, denied generally all the allegations made, and then in substance specially pleaded in defense the following matters as he himself stated them in his brief filed in this court:

"That defendant admits he entered into a certain contract on June 7, 1920, with Gillespie county for the construction of 17,595 miles of gravel and crushed rock road, and that thereafter defendant entered into another contract with plaintiff, dated June 29, 1920, subletting part of said work to plaintiff, but says that plaintiff well knew that in said contract with Gillespie county, which was made a part of the contract between himself and plaintiff, there was contained the following provision:

" 'No work is to be sublet or assigned by the contractor without the written consent of the engineer and the written permission of the state highway engineer,' and that it was well understood, in view of said provision, and in view of the fact that the written consent of the county engineer and the state highway engineer had not been obtained, that plaintiff would proceed with the work under his subcontract with the defendant only until such time that the said Gillespie county made protest and demanded that defendant proceed with said work in his own behalf.

"That the contract between defendant and Gillespie county provided that the work should be completed with twelve months, and after plaintiff had already taken up ten months of said time, and had fallen far behind in his work and in the payment by him for labor, machinery, and material, and in providing a sufficient number of rock crushers and other machinery, and had not performed said work satisfactorily, the county commissioners' court gave defendant written notice that they and the county engineer were not satisfied with either the progress or the manner of the work done by plaintiff, and defendant was therefore compelled to assume his duties under his original contract with the county, and to proceed with the construction of said highway, and defendant denies that he ever used any of plain-

tiff's teams or equipment as alleged in plaintiff's petition.

"That it is wholly untrue that defendant conspired with the county commissioners' court or the county judge' or engineer to conpel plaintiff to surrender the work he was attempting to do, but on the contrary it was defendant's desire that plaintiff should continue the work, and gave him every assistance to prosecute said work, but because of plaintiff's faulty, inefficient, and unsatisfactory manner in performing said work, defendant was compelled, at the request of the commissioners' court and county engineer, to take charge of and complete it.

"That the commissioners' court and the county judge and engineer refused to recognize, ratify, or approve of the subletting of the work by defendant to plaintiff, and on repeated occasions notified both plaintiff and defendant that they were looking solely to defendant to carry out his contract with the county, and refused the request of plaintiff, Davison, to have the vouchers issued to him, and each and every voucher that was issued by the county was payable to defendant, Craven.

"That defendant did not assume control over the employees, teams, or machinery of plaintiff, as alleged by plaintiff, but all that the defendant did was to assume certain obligations contracted by plaintiff with local merchants and materialmen, which were long past due, so that the work would not be interrupted and would not wholly cease.

"That on February 5, 1921, defendant was notified in writing by the county engineer that plaintiff, Davison, was not performing the work satisfactorily, and that formal protest would be made by the commissioners' court at its next regular meeting at Fredericksburg, and requested him to be present. That on February 15, 1921, the court met in session, and gave defendant written notice that the work was not progressing satisfactorily either as to the manner or time of performance; said notice specifying the following objections: '(1) That the proper machinery and tools are not on the job. (2) That the work is not being properly handled and supervised. (3) That at the present rate of progress it cannot possibly be finished within the time specified in the contract. In view of the above, and the fact that your man in charge, Mr. Davison, does not handle the work satisfactorily, we insist upon your furnishing the necessary machinery and tools for the completion of the work within the specified time, and that you take charge of the work personally, or place a suitable and satisfactory man in charge of the same.'

"That after the receipt of the above notice of February 15, 1921, defendant went out to where the work was being done, and found the plaintiff absent, and the employees about ready to quit work for failure of plaintiff to pay back wages. So, as to induce them to continue the work, defendant assured said employees that, if they would not quit, he would see that they were paid. That defendant then came to Houston, where plaintiff resided, to make some satisfactory arrangement with him so that the work could be carried forward satisfactorily to the commissioners' court and county engineer. That defendant took the matter up with the plaintiff, at which time plaintiff admitted that he was financially unable to procure the additional machinery, rock crusher, etc., re-

quired to consummate said work in contract time, and defendant thereupon offered to assist plaintiff in procuring a rock crusher, and defendant did bargain for an additional rock crusher so that plaintiff would be in a position to consummate said work under said contract in the event proper arrangements could be made with the commissioners' court to allow him to continue on this job.

"That on the 16th, 17th, and 18th of March, 1921, plaintiff and defendant met at Fredericksburg, and it was definitely agreed that one Hipp, a competent engineer, would be placed in immediate charge of the work, and said agreement was reduced to writing by an attorney, and all of its terms agreed upon both by plaintiff and defendant. That defendant executed same, and plaintiff agreed that he would sign same after having it examined by his attorney, and agreed to return to the attorney's office that same afternoon and sign said agreement. That defendant considered said matter closed, and, feeling and believing that plaintiff would in good faith go forward with the work in accordance with the agreement and satisfactorily to the commissioners' court, left Fredericksburg on the 18th of March, and came to Houston.

"That on March 19, 1921, instead of proceeding with the work as agreed upon, plaintiff, Davison, moved every team, wagon, shovel and tool of every description from said road, and carried same to another part of the county, and completely abandoned said work.

"That defendant, Craven, returned to Fredericksburg on March 24, 1921, and then, for the first time, learned that the plaintiff, Davison, had abandoned said work, and had removed his teams and other equipment therefrom, and thereupon, on the same date, defendant took control of said work, and prosecuted same to completion.

"That it is true that defendant collected and retained the entire February estimate of $5,593.85, and likewise the entire March estimate, twenty-four of the thirty-one days' work having been done by plaintiff, Davison, before defendant assumed charge and took management and control of the work into his own hands, and for which plaintiff is entitled to a credit of $2,787.60, and that plaintiff is entitled to one-half of the 10 per cent. retained by the county to February 1, 1921, in the sum of $2,322.77, or a total credit of $10,704.10, but that, as shown by the account between plaintiff and defendant, hereto attached and marked Exhibit A, plaintiff is indebted to the defendant on account of money paid out by defendant in behalf of said plaintiff, and which the defendant was obliged to pay under his contract and bond with said county the sum of $10.246.41, leaving a balance due plaintiff by defendant of $457.69, which defendant stands ready, able, and willing to pay, and which he now tenders into court in full settlement of his indebtedness to said plaintiff.

"In conclusion defendant alleged that he only assumed control of said work on March 24, 1921, and only after plaintiff had compelled him to do so by reason of his delay and unsatisfactory performance of the work; that he did not do so willingly, but by reason of his obligation and bond to Gillespie county and in order to consummate said work in a time and manner satisfactory to the commissioners' court

and the county engineer, as he was obligated to do under his contract and bond."

Replying to defendant's answer by supplemental petition, the plaintiff alleged that, if the contract as declared upon was not a valid subletting of the county's contract with Craven, that still plaintiff and defendant entered into an agreement which in law constituted a joint enterprise between them for the completion of the work covered by the contract between Craven and the county, and by which arrangement plaintiff was entitled to receive all the money Gillespie county was to pay, except the 10 per cent. defendant was to retain; that defendant had wrongfully ejected plaintiff from the work, had taken charge thereof, completed it, and had collected the compensation accruing on account thereof, and plaintiff was entitled to an accounting, for which he prayed.

Defendant, Craven, by supplemental answer specially excepted to plaintiff's supplemental petition on the ground that it attempted to vary the terms of an express written contract, and also sought an improper measure of damages.

The case was tried before a jury on special issues, and judgment was rendered in accordance with the verdict of the jury and findings of the court in favor of Davison against Craven for $6,035.70, "on account of estimates and retained percentages by the defendant from Gillespie county, after allowing all lawful credits due the said M. M. Craven thereon," and for the further sum of $6,635, as the net profit which the jury found Davison would have made on that portion of the work which was performed by Craven, together with 6 per cent. interest on the first amount from April 1, 1921, and on the second amount from February 14, 1922, and for all costs of court.

From the judgment so entered defendant Craven presents this appeal.

The issues submitted, and the jury's findings thereon, numbered as below, may be thus summarized:

(1) Was the work done by Davison in substantial compliance with the terms of his contract with Craven? Yes.

(2) Was Davison on February 15, 1921, proceeding in the substantial performance of his contract? Yes.

(3) Was he ready, willing, and able to carry it out at the time Craven took over the work? Yes.

(4) Did Craven, in taking over the contract from him, act in bad faith toward Davison? Yes.

(5) Did Craven, to enable him to take over the work fr m Davison, enter into a conspiracy with the county judge or county engineer of Gillespie court, or either of them? No.

(6) Was the charge made by the county engineer that Davison's work was not in substantial compliance with the plans and specifications made in bad faith? No.

(7) Did Davison voluntarily abandon his contract before Craven took it over? No.

(8) When did Craven take over the rock crushing operation? February 15, 1921.

(9) What amount should Craven be allowed to charge against Davison for the former's personal services in supervising the maintenance of the portion of the work performed by the latter? Nothing.

(10) How much net profit would have accrued to Davison on that portion of the work performed by Craven? $6,635.

The appellant protested in the trial court against the submission of any of these matters to the jury, contending, through different requests for instructions in his own behalf and otherwise specially by means of specific objections to different ones of these questions propounded, that verdicts thereon would be immaterial and inconclusive, chiefly because the contract sued on made the county engineer the final authority between the parties, and the evidence conclusively showed his exercise of it in the manner therein provided adversely to all of the appellee's cause of action, except for unpaid estimates on the work he actually did.

Likewise upon appeal he takes the same position by presentment here, among others, of these points:

### "First Proposition.

"Where a road construction contract with a county provides that the work shall be done according to certain specifications and under the supervision and according to the directions and to the satisfaction of the county engineer, and said engineer is clothed further with the power to discharge any person employed by the contractor who, in his opinion, is incompetent, unfaithful, disorderly, or insubordinate, then the action of the engineer in rejecting the work or in discharging such employee of the contractor is final and binding in the absence of bad faith or fraud alleged and proved by the aggrieved party.

### "Second Proposition.

"In a suit by a subcontractor against the contractor under contract with a county, which contract provides that the contractor shall give his constant personal attention to the work, or place same in charge of a competent and reliable superintendent acceptable to the engineer, and that, 'If, at any time during the work, progress satisfactory to the engineer shall not have been made, the contractor shall increase the force, tools, and equipment as directed by the engineer,' and further that, 'whenever the engineer shall determine that any person employed by the contractor is, in his opinion, incompetent, unfaithful, disorderly, or insubordinate, such person shall, upon notice, be discharged from the work, and shall not again be employed on it, except with the written consent of the engineer,' and the evidence shows, and the jury finds, that the engineer has in good faith expressed his dissatisfaction with the progress of the work and the insuffi-

260 S.W.—70

ciency of the tools and equipment, and has demanded the discharge of the subcontractor, whom the engineer has at all times, with the knowledge and acquiescence of the subcontractor, considered to be a superintendent of the contractor, then said action of the engineer is a complete defense to the subcontractor's suit against the contractor for damages for resuming control of the work and completing the contract.

"Third Proposition.

"In a suit by a subcontractor against the contractor under a contract with a county, which contract provides that 'in all questions arising under the terms of this contract between the parties hereto * * * the decisions of the engineer in such cases shall be final and binding upon both alike,' the decision of the engineer, when rendered in good faith and without fraud, that the subcontractor should not be allowed, because of default and unsatisfactory work, to proceed with the subcontract is final and binding on the subcontractor, and is a complete defense to contractor in such suit."

"Fifth Proposition.

"Where a road construction contract provides that 'no work is to be sublet or assigned by a contractor without the written consent of the engineer and written approval of the state highway engineer,' and the contractor and one with knowledge of this provision enter into a subcontract for such construction work without the approval or consent of the engineer, upon such engineer in good faith finding the work of such subcontractor faulty and unsatisfactory, and demanding that the contractor resume personal charge and supervision of the work or put a competent superintendent in charge, the contractor is not liable in damages to the subcontractor for assuming charge or putting a superintendent satisfactory to the engineer in charge of such construction work."

[1] We sustain this position.

The trial court properly assumed as an uncontroverted fact, as is indicated in special issue No. 6, that the county engineer had in good faith charged that the work done by appellee was not in substantial compliance with the plans and specifications; the evidence was also undisputed that on that account the county demanded that appellant take over the work himself or place a suitable and satisfactory man in charge, and that in so doing there was no conspiracy as charged between the county officers and appellant.

While there was further no support in the testimony for the submission of or the jury's answer to the fourth issue as to bad faith on appellant's part in taking over the work from appellee, we think, in view of the antecedent situation just stated. it could have made no difference if there had been; in other words, that both agreed under contract to abide by the action of the county authorities, and, when that had been fairly exercised, it became the right, if not indeed the duty of appellant—whatever the motive of his action at that time—to take over the work from the appellee; evidence touching the quality of his faith towards appellee in that connection was therefore immaterial.

The following authorities support the general conclusion stated: Williams v. Baldwin (Tex. Com. App.) 228 S. W. 554; Childress v. Smith, 90 Tex. 610, 38 S. W. 518, 40 S. W. 389; Brin v. McGregor (Tex. Civ. App.) 45 S. W. 923; Buchanan v. Gibbs (Tex. Civ. App.) 156 S. W. 914; Kettler Brass Mfg. Co. v. O'Neil, 57 Tex. Civ. App. 568, 122 S. W. 900; 9 Corpus Juris, 772.

For the same reason the jury's opinion on whether or not appellee had substantially complied with the contract in what he had done, was ready, able, and willing to so continue until its completion, and was enroute with that objective on February 15, 1921, was beside the mark; the court should have sustained appellant's contention that these matters were by express stipulation left by the parties to the honest opinion and judgment of the county engineer exclusively.

[2] In the quoted contract between appellant and Gillespie county, which was made a part of the one between the parties hereto, was this provision, "No work is to be sublet or assigned by the contractor without the written consent of the engineer and the written permission of the state highway engineer"; being well aware of this limitation upon and fixing of his status, knowing as he admittedly did at the time that the written consent of neither the county nor the state highway engineer had been obtained, the appellee in so contracting—in legal effect at least—thus agreed that he would assume the position of a superintendent of the contractor under the latter's contract with the county, and would so proceed with the work only so long as the engineers named, or either of them, did not object; not only so, but the undisputed evidence shows that with his full recognition and acquiescence the county so treated him in all the work he did or undertook to do on the road, that correspondingly it always looked to Craven as his chief, and throughout the transactions culminating in this litigation held Craven strictly to his contractual obligations to it, never at any time accepting Davison as a subcontractor thereunder; the appellee could not therefore be given the rights and privileges of a subcontractor in the usual acceptation of that term. Craven v. Davison (Tex. Civ. App.) 233 S. W. 873.

[3] The conclusions already stated control the disposition of the leading questions presented; from them it follows that the appellee's claim for any profit was not maintainable, and his recovery of $6,635, thereon cannot be permitted to stand; the other element awarded him, the $6,035, being the net amount accruing by virtue of the estimate on the work actually done by him, less the credits found by the court to be due appellant, is not questioned as to its correctness

by either litigant; it should therefore stand, unless the further claim of appellant that his cross-action for further offsets by reason of unpaid amounts due him from appellee on a separate transaction in Colorado county between them should prevail; as to this, we agree with the trial court that he did not sufficiently plead it in counterclaim, hence the action there in sustaining a special exception to it was proper. The only averment undertaking to declare upon this matter is, in substance, "that, as shown by the account between the plaintiff and the defendant, hereto attached and made a part hereof, being marked Exhibit A, the plaintiff is indebted to the defendant on account of moneys paid out by the defendant in behalf of said plaintiff, and which the said defendant was obligated to pay under his contract and bond with said county (Gillespie) the sum of $10,246.41," etc. In the exhibit attached, items totalling several thousand dollars appear merely under such recitations as "January 10, 1922, to 11 months' salary M. M. Craven, $200 per month looking over work, $2,200." There are no allegations that any contract existed in Colorado county between the parties; that no settlement of it had been made; that it had been breached by Davison; and that there were obligations under it due by him to Craven and unpaid; obviously, to merely aver that he was indebted as shown in the attached itemized account is insufficient.

We conclude that the portion of the judgment awarding the appellee the $6,035.70 should be affirmed, and that the remainder giving him the $6,635 as for net profit should be reversed, and that this court's judgment should enter in appellant's favor upon that feature of the cause. It has been so ordered.

Affirmed in part, reversed and rendered in part.

### On Motion for Rehearing.

The statement on the concluding page of the original opinion that the trial court sustained a special exception to appellant's cross-action for amounts alleged to be due him from appellee on a separate transaction in Colorado county is an inaccuracy of recitation, but there is no error of material substance in it. While no special exception to it was sustained, the court did, on objection that the matter had no proper support in the pleadings of the appellee, decline to receive testimony offered under it. We think this action was proper.

The motions of both parties for rehearing have been carefully considered, but in our opinion should be overruled. It will be so ordered.

Overruled.