## Hollowell et al. v. Hobby et al.

Oct. 18, 1940.

C. H. Wilson, Judge.

S. D. Hodge for appellants.

Frederick Olszewski and George M. Dearing for appellees.

OPINION OF THE COURT BY JUDGE TILFORD—Reversing.

The appellants, Mary F. Hollowell and Ludie E. Hollowell, are mother and daughter, and as such, acquired by inheritance and in the settlement of the estate of John W. Hollowell, the husband and father, his undivided one-half interest in a mineral lease. The appellee, L. J. Hobby, who, for convenience, will hereafter be referred to as the appellee, is the owner of the other one-half interest, having acquired the same by assignment from John W. Hollowell on July 12, 1930, approximately ten months prior to Hollowell's death. The assignment was made pursuant to a written contract between the parties dated November 1, 1929, which recited that the appellee, if successful in developing the lease within ten months and fifteen days so as to produce certain minerals in paying quantities, should receive by assignment a one-half interest therein. The contract further provided that after the lease had been thoroughly developed

a corporation should be formed to operate and conduct the mine and that the parties should be equal owners of the lease and allowed equal value therefor in the capital stock of the Corporation. However, no corporation was ever formed, and appellee's interest in the lease is held by virtue of the assignment which reads as follows:

"In consideration of labor performed and services rendered, and the further consideration of the transfer of one-half interest in all spar mined and now on the ground on said premises, I hereby transfer and assign to Luther J. Hobby an undivided one-half interest in and to the foregoing lease, together with its rights, privileges and appurtenances, gas and oil excepted."

In February, 1931, Hollowell and the appellee, as lessors, leased the mine for a period of one year, and one of the lessees appears to have been John Hughett, who operated it under this lease until February 16, 1932. On January 21, 1932, the appellees and the appellants, together with a son of John W. Hollowell, who, in the settlement of the estate, had transferred his interest to the appellants, leased the property to Hughett for a period of two years ending February 16, 1934, the rent to consist of royalties thus stated in the lease:

"$2.25 per ton on said spar so mined and marketed which is based on the present market price of said spar at $12.00 per ton, and it is agreed that if spar advances in value that an additional royalty of twenty-five cents per ton for each two dollar advance received in the market over $12.00 per ton shall be due and payable as hereinafter stated."

On January 23, 1934, the lease was renewed for a period of two years ending February 16, 1936; and on November 12, 1935, a new lease was executed covering the period to February 16, 1939, containing the same basic scale of royalties and embracing some additional territory. Under date of January 23, 1934, as an inducement to appellee to renew the lease which expired on February 16, 1934, and without the knowledge of the appellants, the following contract was executed:

"This contract made and entered into at Princeton, Caldwell County, Kentucky, this 23rd, day of January, 1934, by and between John Hughett

and Princeton Fluorspar Company, The Company, a corporation duly organized under the laws of the State of Kentucky, party of the first part, and L. J. Hobby, party of the second part, Witnesseth,

"That the party of the first part, in consideration of the premises and agreements of said second part herein set forth, hereby promises and agrees to pay party of second part during the life of a lease this day written and signed by said parties covering the operation of a certain tract of land lying on the Wilson Warehouse road which lease runs for a period of two years from February 17th, 1934 to February 17th, 1936 and is to cover Fluorspar mined between the dates above mentioned and no other.

"First. The party of the second part, L. J. Hobby agrees to haul from said mine all Fluorspar mined to the loading point on the Illinois Central Railroad Company at Princeton, Ky., and load on cars said Fluorspar in a business like manner. To level down said spar in the cars and to clean up all waste and return same to the mine to be re-cleaned and to avoid all waste in loading and transporting. Said Hobby is to clean all freight cars and put them in condition for loading.

"Second. Said party of the second part agrees to load said spar promptly when notified to do so by the company or John Hughett or his agent, and to furnish extra help in case of a rush order, If for any reason said Hobby cannot load said spar when so ordered then the company or Hughett or his agent may have the loading done and to charge all expense to Hobby and deduct the amount from any money due Hobby.

"Third. Said Hobby is to receive for loading and hauling, One Dollar and seventy Five cents per ton ($1.75) in addition to his royalty under the terms of the lease and in no event is he to receive more than Two Dollars Eighty Seven and one half cents per ton ($2.87½), for both royalty hauling and loading. This covers any additional royalty which might accrue under the terms of the lease on a sliding scale price.

"Fourth. It is agreed that Railroad weights

shall cover all settlements. Payment for hauling may be made from checks received from scale of spar covering such spar.

"Fifth. Said Hobby is to assume all liabilities from the performance of his duties under this contract and is to hold Princeton Fluorspar Company and Hughett immune from any damage accruing thereunder. In witness whereof the parties have hereunto set their hands to duplicate hereof the day and year first above written.

"Princeton Fluorspar Co.,
"By John Hughett, Prs.
"John Hughett,
"L. J. Hobby."

Under date of February 16, 1936, a similar contract between appellee, Hughett, and the Princeton Fluorspar Company was entered into without the knowledge of the appellants covering the period between February 16, 1936, and February 16, 1939. Only one material change appears, and that was made by the insertion of a paragraph reading as follows:

"It is understood as part of this contract that that the new lease this day executed, includes other territory or land for mining purposes than the old lease. That said new territory is located South of the land included in the Old Lease. It is further agreed that should First parties, the heirs or assigns, mine any flourspar from said new territory, that the hauling of said Flour Spar from said new territory shall be included in and is made a part of this lease but that for said hauling second party shall only receive the sum of Seventy Cents ($70c) per ton, in addition to the royalty mentioned in said lease. That said Seventy cents per ton shall be the rate per ton for said hauling of said Flour Spar regardless of the grade of said *Spar*."

The appellants and the appellee having disagreed with Hughett over other matters and among themselves over the distribution of the royalties due under the final lease which had expired, Hughett, on April 27, 1939, instituted suit against the appellants and the appellees setting forth his lease, its expiration, that there was in his possession $620.13 due the appellants and the appel-

lee as royalties, and praying the advice of the court as to the distribution of the royalties and that a receiver be appointed. The court appointed a receiver and directed the payment of certain sums due other parties. The branch of the litigation with which we are concerned on this appeal arose out of a cross-petition filed by the appellants against the appellee in which they asserted that they were equal partners with appellee; that 62½c per ton was a reasonable charge and the actual charge made by appellee for hauling; and that the remainder of the sums collected by appellee from Hughett under the contracts of January 23, 1934, and February 16, 1936, were extra royalties in which the appellants were entitled to share. The prayer of the cross-petition was in effect that they be equalized with appellee by the payment to them of $6847.91 out of the proceeds of spar then on hand, and that if there should not be a sufficient amount of spar on hand to equalize them, that they recover judgment against Hobby for the balance. In order to dispose of this appeal in an opinion of a reasonable length, we shall be compelled to refrain from describing the pleadings with greater particularity. It is sufficient to say that the Chancellor found that no partnership existed between the appellants and the appellee and dismissed their cross-petition.

While we agree with the Chancellor that the proof did not establish a partnership, we are nevertheless of the opinion that if the amounts received by appellee from Hughett under the contracts of January 23, 1934, and February 16, 1936, include "extra" royalties paid appellee to induce him to execute and to cause appellants to execute renewal leases for a named royalty, which appellants were led to believe was the actual royalty, the appellants were entitled to the relief sought, since the law will not permit one co-tenant, where all must act in unison, to obtain a secret profit to the disadvantage of his co-tenants.

The relationship between joint tenants is not that of partner and co-partner and hence is not permeated throughout with the requirement that benefits derived by each must be shared by all; but it is of such a nature that in dealing with others, joint action is frequently necessary in order to obtain the best results, from which arises the requirement that at least on such occasions one may not profit at the expense of those with whom

he is ostensibly acting in concert, and who, from their previous association with him, have the right, under an enlightened code of ethics, to expect fair treatment. Garr et al. v. Boswell, 38 S. W. 513, 18 Ky. Law Rep. 814; Corpus Juris, Volume 62, page 419, Section 23. Thus the issue is narrowed, and we shall proceed to discuss the evidence bearing upon it.

The appellant, Ludie E. Hollowell, testified that for a short period prior to her father's death, he and the appellee operated the mine as partners, and that thereafter she and her mother bore half of any expense incurred and the appellee the other half; that she kept the books, and, with appellee's knowledge and approval, made income tax reports to the Federal and State Governments showing that Hollowell and Hobby was a partnership, and, as such, received the royalties. We refer to this testimony merely to show the closeness of the relationship which existed between the parties. She further testified, with reference to the 1934 lease, that appellee had informed her that he did not think that Mr. Hughett would pay any more royalties, although when the 1936-1939 lease was executed, in discussing with her the matter of royalties, he suggested that they might ask 25c more. She did not learn of the hauling contract until February 1939, during conferences which were held with reference to compromising pending litigation with Hughett. Appellee brought the contract to her for her inspection after it had become evident that it would be necessary to make an examination of Hughett's books, and when asked by the witness "how he would feel if he were in her place," replied that "he looked at it different now than he did then and he did do wrong." He was at first willing to reimburse appellants, but later said that he had the right to haul at any price he pleased and would not share the proceeds of the hauling contract unless he was allowed $100 per month for seven years and eleven months as a salary, one-half to be paid by appellants. She knew that appellee had been doing Hughett's hauling, and after the 1934 lease had been executed, appellee and Hughett told her that the hauling fee had been increased from 50c to 75c, which she did not object to, although she had had similar hauling done for 50c a ton and that price had been charged by appellee during the short period that he and her father had operated the mine. She testified that 62½c per ton would be a fair price. Hughett testified that while the

appellants were willing to renew the leases for the same royalties previously paid, Hobby was not. We quote from his testimony:

"My remembrance of the conversation is this: That Mr. Hobby wanted to do the hauling and it was agreeable to me for him to and we discussed the price of the hauling, and as I remember, I and Mr. Hobby said that we believed that a fair reasonable price would be 62½c but as we went along I agreed in order to satisfy him, and give him a chance to make money, that we would make the hauling price 75c a ton."

This evidently related to the hauling contract that existed prior to the contract of January 23, 1934, but, in any event, it throws considerable light upon the actual value of the hauling. It was further disclosed by this witness that some of the checks to appellee bore the indorsement "For hauling and extra royalty," and that he had paid appellee as extra royalty $5892.15. Again we quote from his testimony:

"Q. You stated that the amount you paid him as extra royalty as shown by your books was $5,892.15, is that in excess over and above the hauling at 75c per ton? A. This statement I believe is fairly correct and as I understand it, the hauling would be at 75c and to determine the extra royalty you would separate this amount from the original royalty. This column here shows for extra royalty $5,892.15, that is if this is a true total.

"Q. That is calculated according to the two contracts with Mr. Hobby, that would show the difference between what you paid the Hollowells and Mr. Hobby? A. Yes."

The appellee attempted to show by his own testimony and that of one witness, that $1.75 per ton was a reasonable hauling charge in view of the numerous duties imposed upon him by the hauling contract, although he admitted that he had originally hauled "a little of the spar for 62½c per ton." He made no attempt to deny the material portions of the testimony of the appellant, Ludie E. Hollowell, but introduced witnesses by whose testimony he attempted to show that he and John W. Hollowell had never operated the mine

as partners. Nor would he say that Hughett could not have procured someone to do the hauling for 62½c per ton, merely stating, when pressed, "I am not interested in that part of it." While the witnesses introduced by the appellants to establish that 62½c per ton was a reasonable hauling charge were in some respects unsatisfactory, there can be no doubt from the conduct of the parties themselves and the documentary evidence in the record that $1.75 per ton was an extortionate charge, paid, we are convinced, for the purpose of inducing appellee to accept, ostensibly, and in turn induce appellants to accept, the proffered royalty. A significant fact is the undertaking of appellee in the 1936 contract to haul spar which might be mined from the new territory included in the 1936-1939 lease for 70c per ton. Another is the provision in the hauling contract that the maximum to be paid appellee thereunder was $2.87½ "for both royalty, hauling, and loading," and that this amount should cover "any additional royalty which might accrue under the terms of the lease on a sliding scale price." $2.87½ is one-half of the minimum royalty of $2.25 provided for in the lease, plus the alleged hauling charge of $1.75. Why, if $1.75 was a reasonable hauling charge, should it have been automatically diminished when the sale price of spar increased sufficiently to increase the basic royalty?

We are not to be understood as having recited all of the testimony. Nor have we overlooked the fact that some of the evidence introduced was incompetent, though not excepted to. Appellee's present counsel did not represent him in the Circuit Court, and, in effect, requests us to overlook the failure of appellee's former counsel to file exceptions, and thus to disregard the entries made by Hughett in which the direct payments to appellee were denominated "Hauling and Extra Royalty." However, with the incompetent testimony eliminated from consideration, there is more than enough remaining to justify the conclusion we have reached, which is that appellants are entitled to an accounting and to recover one-half of the amount paid appellee by Hughett under the separate contracts between them in excess of 75c per ton for hauling. We have adopted the latter figure rather than 62½c because of the statement of Hughett that he had increased the hauling charge from 62½c to 75c prior to the 1934 lease, and because

the appellant, Ludie E. Hollowell, had been informed of that increase. This conclusion renders it unnecessary to consider appellants' other objections to the judgment appealed from.

Judgment reversed for proceedings consistent with this opinion, and with directions to enter judgment in favor of appellants on their cross-petition against the appellee, L. J. Hobby, for $2946.08, with interest at the rate of 6% per annum from May 1st, 1939.